IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No.  3:12-CR-317-L |
| v. | § | No.  3:12-CR-413-L |
| | § | No.  3:13-CR-030-L |
| BARRETT LANCASTER BROWN | § | |

GOVERNMENT'S OPPOSITION TO CONTINUANCE

1.     The United States Attorney for the Northern District of Texas, by and through the undersigned Assistant United States Attorney, files its opposition to the continuance requested by the defense.

BROWN'S POSITION SUMMARIZED

2.     Brown complains that he has been unable to prepare for a September 2013 trial due to the volume of discovery.   Brown requests the trials be continued until February 2014.

GOVERNMENT'S POSITION SUMMARIZED

3.     The government requests that this Honorable Court deny Brown's motion for a continuance.   Brown's cases have not been deemed complex, and therefore Brown's right to a speedy trial is at issue.   Brown failed to address Brown's right to or waiver of a speedy trial.

4.     The defense has had adequate time to prepare for trial.   Brown has had the bulk of discovery for at least seven (7) months, since approximately February 1, 2013.   Brown's

attorney failed to explain why seven (7) months was insufficient in a non-complex case to prepare for trial.

5.     Knowing that the trials were set in September 2013, the new defense team accepted representation of Brown on May 1, 2013, and stated to the United States Magistrate Judge that they were "confident that [they would] be able to get up to speed" and "anticipate[d] trying the case on time."

6.     Brown now requests a trial date in February 2013.   The undersigned is unavailable in February 2013 to try these cases.   If the Court deems a continuance necessary *and* appropriate in light of Brown's right to a speedy trial, the government requests, in the alternative, that the following weeks be considered when setting these matters for trial:

> March 10, 2014
> March 17, 2014
> April 28, 2014
> Any week in May 2014

7.     The undersigned conferred with the defense, and they have no conflicts on these dates.   The government estimates that its case in chief in the 3:12-317-L trial should last no more than three days.   The government estimates that its case in chief in the second trial (3:12-413-L and 3:13-CR-030-L) should last no more than eight days.   The government will file a list of its conflicts *in camera*.

SPEEDY TRIAL

8.     A defendant's trial must commence within 70 days of the date the indictment was filed, or from the defendant's initial appearance, whichever is later.   *See* 18 U.S.C.

§ 3161(c)(1).  Brown's cases have not been declared complex, nor has any party moved to declare the cases complex.   Therefore the Speedy Trial exclusions pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) do not apply.    Per 18 U.S.C. § 3161(h)(1)(B), the delays associated with respect to other charges against the defendant were excluded from this 70 day period (i.e. the Indictments returned in 3:12-CR-413-L and 3:13-CR-030-L).

9. Per 18 U.S.C. § 3161(h)(1)(A) the time during which Brown's mental capabilities were being examined were excluded from this 70 days.   The competency hearing in 3:12-CR-317-L was held on January 30, 2013, and the court's order finding Brown competent to stand trial was filed on **February 4, 2013** (Document 30).   The government contends that Brown's speedy trial clock did not start to run until **February 4, 2013**.

10. Any delay resulting from pretrial motions, or from any proceeding concerning the defendant that is actually under advisement by the court is excluded from the 70 day period.   See 18 U.S.C. § 3161(h)(1)(D) and (H).  Per the docket in 3:12-CR-317-L, the following motions and/or actions occurred:

   a. 2/13/2013   Government's Motion (Document 34).   (2/4 through 2/13 = 9 days)

      • Court denied the motion without prejudice on 3/29/2013 (Document 41) but ordered a review of the matter, and later referred the matter to the Magistrate Court (see e. below).
      • The Magistrate Court orally denied the Motion on May 1, 2013, but did not issue the Order until **May 30, 2013** (Document 64).   (106 days tolled).

   b. 2/26/2013   Government's Motion for Reciprocal Discovery (Document 37).

      • The Motion is pending a resolution.

c. 2/26/2013   Government's Motion Under Fed. R. Crim. P. 12.2 (Document 38).

   • The Motion is pending a resolution.

d. 3/4/2013   Defendant's Unopposed Motion to Continue Trial from May 6, 2013 to August 2013 (Document 40).

   • Court granted on March 6, 2013, and set trials for September 3, 2013 and September 23, 2013.

e. 4/16/2013   Court remanded matter to Magistrate Judge Stickney to determine Brown's need for appointed counsel.

   Magistrate Judge Stickney set matter for status conference on May 1, 2013, and ultimately issued an order on May 30, 2013. (see a. above).

f. 5/1/2013   Defendant's Motion to Substitute Counsel (Document 56 and 57).

   • Court granted Motion on May 7, 2013 (Document 63). (6 days tolled).

g. 6/18/2013   Government's Motion for a Protective Order (Document 65).

   • Court granted Motion on 6/20/2013 (Document 66). (2 days tolled).

h. 6/21/2013   Defendant's Motion to Continue Deadlines

   • Court granted Motion on 7/3/2013 (Document 68). (12 days tolled).

i. 7/9/2013    Government's Motion (Document 69).

   • Court granted Motion on 7/9/2013 (Document 70). (0 days tolled).

j. 7/12/2013   Government Motion (Document 41).

   • Court granted Motion on 7/15/2013 (Document 72). (3 days tolled).

k. 7/16/2013   Government's Motion (Document 73).

   • Court granted Motion on 7/17/2013 (Document 72). (1 day tolled).

l. 7/19/2013   Defendant's Motion (Document 75).

•Court granted Motion on 7/22/2013 (Document 76). (3 days tolled).

m. 7/31/2013   Defendant's Motion to Continue Trial (Document

•The Motion is pending a resolution.

11. The government summarizes its interpretation of Brown's speedy trial issue:

| Date | Action | Days Tolled | Days Run | Total Days Run |
|---|---|---|---|---|
| Feb. 4, 2013 | see ¶9.  Speedy Trial clock begins to run - Court finds Brown competent | | | |
| Feb. 13, 2013 | see ¶10(a) and (e) Government's Motion is not resolved fully until the Magistrate Court issues its order on May 30, 2013 | 106 days | 9 days | 9 days |
| Feb. 26, 2013 | see ¶10(b). | Since these motions are still pending, the clock may be tolled indefinitely. | | |
| June 18, 2013 - June 20, 2013 | see ¶10(g). | If not tolled indefinitely due to ¶10(b), 2 days | *19 days | 28 days |
| June 21, 2013 - July 3, 2013 | see ¶10(h). | If not tolled indefinitely due to ¶10(b), 12 days | 1 day | 29 days |
| July 12, 2013 - July 15, 2013 | see ¶10(j). | If not tolled indefinitely due to ¶10(b), 3 days | 9 days | 38 days |
| July 16, 2013 - July 17, 2013 | see ¶10(k). | If not tolled indefinitely due to ¶10(b), 1 day | 1 day | 39 days |

| Date | Action | Days Tolled | Days Run | Total Days Run |
|---|---|---|---|---|
| July 19, 2013 - July 22, 2013 | see ¶10(l). | If not tolled indefinitely due to ¶10(b), 3 days | 2 days | 41 days |
| July 31, 2013 | see ¶10(m). | Pending | 9 days | 50 days (as of July 31, 2013) |

*For purposes of this chart, the government began counting from May 30, 2013.

12. If the Court grants Brown's motion to continue the trial dates, the government requests that this Court find that only 9 days have elapsed on the Speedy Trial Act, that being the length of time between this court finding Brown competent to stand trial and the date the government filed its pretrial motions which are still pending. In the alternative, the government requests that this Court (1) require Brown to waive his rights to a speedy trial, and (2) make appropriate findings pursuant to 18 U.S.C. § 3161.

BROWN FAILS TO WAIVE HIS RIGHT TO A SPEEDY TRIAL

13. Brown's cases have not been deemed complex. In his motion, Brown has not produced or articulated his waiver of his speedy trial rights.

INACCURACIES IN BROWN'S MOTION

14. In his motion, Brown identified four "categories" of discovery: (1) the 2 Terabyte hard drive containing most of the data from the electronic devices seized during the search warrants at Brown's and his mother's residence, (2) DVDs containing digital evidence (either obtained digitally from the source of the data or by scanning from paper

Government's Opposition to Continuance        Page 6

documents), (3) the search warrant documents, and (4) the transcript of a court proceeding (Brown's initial appearance, probable cause, and detention hearing).[1]

15. The government produced item #2 to the defense in January 2013 and #1 to the defense on February 1, 2013. The government understands its obligation to continue to produce any newly obtained items obtained during its preparation for trial. The search warrant documents (Item #3), while discoverable, did not constitute evidence as is commonly associated with discovery. The government produced the seven search[2] warrants in a timely manner for the defense to review. The production of the search warrant documents also constituted an early production of *Jencks*. Item #4 is not an item of discovery. (See ¶ 16).

16. Brown wrongfully claimed that the initial appearance, probable cause, and detention hearing transcript (Item #4) is a category of discovery. Brown wrongfully stated that it was the government's obligation to provide him a copy of a transcript of a court proceeding that had not yet been transcribed. Brown is wrong on both points. Brown and his prior attorney of record were present and participated at the initial appearance, probable cause, and detention hearing. If Brown wanted the transcript of a court proceeding, it was his responsibility to order the same from the court. In this case the proceedings were sealed, but Brown had the ability and responsibility to file a motion

---

[1] The defense failed to identify other already items produced by the government, including but not limited, to all the forensic reports, the chain of custody documents, Brown's statements, Brown's criminal history, the recorded jail calls from Mansfield and FCI Fort Worth, Brown's emails from FCI Fort Worth, and visitation records.

[2] The seven search warrants related to the searches of 2 different physical locations and two different sources of data. The affidavits for the search warrants contained substantially the same information.

to unseal and transcribe the proceedings, if he wanted a transcript. Since the hearing date (September 13, 2012) to the filing date of his motion (July 31, 2013), Brown failed to exercise due diligence and failed to order the transcript from the Magistrate Judge's court.

17.     If the government had such a transcript, it would normally turn over the transcript to the defense pursuant to *Jencks*, and that production would not happen until a day before the witness testified pursuant to local practice. In this case, the government did what the defense could have done, it submitted a request for the transcript to be conditionally unsealed and transcribed. However, the government has agreed to assist the defense and produce this particular *Jencks* material early; that is, to provide a copy of its transcript to the defense, once the same has been transcribed and delivered to the undersigned.

DISCOVERY AND DUE DILIGENCE

18.     The defense contends in its motion that they are preparing for this case with due diligence. The government disagrees. The current defense team failed to consult with the undersigned prior to agreeing to represent Brown. It has been the undersigned's experience that defense counsel commonly confer with the prosecution to ascertain the amount of discovery expected in the case.

19.     The current defense team has not meet in person with the prosecution team to discuss the discovery, the cases, or the upcoming trials. It has been the undersigned's experience that defense counsel commonly meet in person on numerous occasions with the

prosecution to facilitate the discovery process. The undersigned has extended numerous invitations to the defense to meet with them regarding the discovery and upcoming trials.[3]

20. The bulk of the discovery was in the possession of the prior defense counsel since approximately February 1, 2013. Brown's new defense team has been representing Brown since the hearing on May 1, 2013. In his motion, the new defense team did not retrieve Brown's file from the prior attorney until sometime in June 2013.

21. The current defense team describes the discovery in Brown's cases as "substantial." While the 2 Terabyte hard drive contains a substantial amount of data (i.e. less than 2 Terabytes), it pales in comparison to other more complex cases tried in this district with *hundreds* of Terabytes of data.

PUBLICITY

22. Further delays in the trial date will allow the defense to continue to defy the United States Magistrate Judge's admonishment on May 1, 2013, that being "not to try the case in the media." The government is aware of dozens of instances (before and after the admonishment) wherein Brown has or others on his behalf have solicited the services of the media or media-types to discuss his cases. Since May 1, 2013, the government has reason to believe that Brown's attorney coordinates and/or approves the use of the media. Most of the publicity about Brown thus far contain gross fabrications and substantially false recitations of facts and law which may harm both the government and the defense

---

3 Brown's prior counsel and forensic examiner met with the government in February 2013, to discuss the evidence contained in the 2 Terabyte hard drive.

during jury selection.   The following are a few examples of the defense-solicited/encouraged publicity.

23.   On March 7, 2013, from the Mansfield Jail, Brown telephoned a person with Vice.com on several occasions, wherein the person interviewed Brown regarding his case and Project PM.   The article was made public on March 26, 2013 at vice.com.

24.   In March 2013, from the Mansfield Jail, Brown telephoned a person with The Guardian, wherein the person interviewed Brown regarding his case.   The article was made public on March 21, 2013.

25.   In April 2013, Brown had numerous conversations with an individual who wanted to do a documentary on Brown and Project PM.   In June 2013 and July 2013, the documentary was being 'worked on,' but has yet to be made public.

26.   On May 3, 2013, the self-proclaimed founder and director of the website www.freebarrettbrown.org told Brown on the telephone that he coordinated all media through Brown's legal counsel.   He told Brown that RT America requested to do a program about Brown, and there were inquiries from dallasnews.com.   Brown confirmed that he and his attorney have a media strategy, and acknowledged that the attorney will be reviewing the possibility of a documentary.   Brown's friend produced and made public two articles about Brown and his criminal cases, one on July 13, 2013 and the other on July 31, 2013.

27. Brown's friend confirmed in a statement to the press (posted on August 7, 2013) that Brown's lawyers had discussions with a specific media person to arrange an in-person interview with Brown at the jail.

28. On June 6, 2013, Brown told a person from the Rolling Stone to do a story on Brown, and instructed the person to coordinate with his attorney.

29. During July 2013 and August 2013, Brown discussed with other persons the probability of Esquire, Rolling Stone, and/or Vice making certain articles public. Brown commented that his attorney was involved.

30. Between May 1, 2013 and current date, part of the media strategy included soliciting comments from journalists, authors, and other high profile individuals to comment publically about Brown's criminal charges, said public comments being posted at http://freebarrettbrown.org/supporters/.

31. Several times a week since his incarceration, Brown requested another person to search the Internet for Brown's name and to tell Brown what comments had been made about him or articles had been written about him. Brown also requested that the person access Twitter.com and tell Brown how many times those commentaries or articles had been retweeted.

32. Brown has shown his intent to continue to manipulate the public through press and social media comments, in defiance of the admonishment by the United States Magistrate Judge. Based on the articles already published, there is a substantial likelihood that "extrajudicial commentary" made by or condoned by the defense will "undermine a fair

trial." *United States v. Brown,* 218 F.3d 415, 428 (5th Cir. 2000). Whether or not the trial is continued, the government requests this Honorable Court to instruct the parties to refrain from making "any statement to members of any television, radio, newspaper, magazine, internet (including, but not limited to, bloggers), or other media organization about this case, other than matters of public record." *United States v. Hill*, 420 Fed.Appx. 407, 410 (5th Cir. 2011), *United States v. Davis*, 904 F.Supp 564 565 (E.D.La. 1995).4

CONCLUSION

33. The government respectfully requests that this Honorable Court deny the defense's second motion to continue the trial date; or in the alternative, after (1) finding good cause for the continuance, (2) finding that the speedy trial act will accommodate a continuance, and (3) restricting the parties use of the media, continue the trial to the weeks of March 10, 2014, March 17, 2014, April 28, 2014, or any week in May 2014.

    Respectfully submitted,

    SARAH R. SALDAÑA
    UNITED STATES ATTORNEY

    *S/ Candina S. Heath*
    CANDINA S. HEATH
    Assistant United States Attorney
    State of Texas Bar No. 09347450
    1100 Commerce Street, 3rd Floor
    Dallas, Texas 75242
    Tel: 214.659.8600 Fax: 214.767.2846
    candina.heath@usdoj.gov

---

4     Upon request, the government can provide to the Court more detail on the above examples, as well as additional examples.

## CERTIFICATE OF SERVICE

     I hereby certify that on August 7, 2013, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing (ECF) system of the court. The ECF system sent a "Notice of Electronic Filing" to Brown's attorneys of record Ahmed Ghappour, Charles Swift, and Marlo Cadeddu, who consented in writing to accept this Notice as service of this document by electronic means.

                                    *S/ Candina S. Heath*
                                    CANDINA S. HEATH
                                    Assistant United States Attorney