IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No: 3:12-CR-317-L |
| | § | Hon. Sam A. Lindsay |
| BARRETT LANCASTER BROWN | § | |

**MOTION TO DISMISS THE INDICTMENT**

Defendant BARRETT LANCASTER BROWN files this motion to dismiss the indictment, or in the alternative strike surplusage. In support thereof, he would show the Court the following:

**INTRODUCTION**

For the reasons articulated below, the Court should dismiss the indictment in its entirety. As discussed in Point I, Counts One and Three fail to state an offense and must be dismissed. These counts seek to punish Mr. Brown for his spoken words, yet the statements alleged do not rise to the level of a "true threat" of physical harm, as required by the First Amendment.

As discussed in Point II, Count Two is also fatally flawed for failure to allege two essential elements of the charged crime – an unlawful agreement, and an act in furtherance of its object. As articulated in Point III, to the extent any of the charges in the indictment are allowed to stand, the Court should order the government to delete the prejudicial surplusage described therein.

# ARGUMENT

## POINT I.

### COUNTS ONE & THREE SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE AN OFFENSE

Rule 12(b), F.R.Cr.P., provides in relevant part that "[a]ny defense, objection, or request that the court can determine without a trial of the general issue" may be raised before trial by motion. Rule12(b)(3)(B) provides "at any time while the case is pending, the court may hear a claim that the indictment ... fails ... to state an offense." *United States v. Whitfield*, 590 F.3d 325, 359 (5th Cir. 2009). Courts have routinely held that for purposes of Rule 12(b)(3), "a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Stock*, 728 F.3d 287, 291 (3d Cir. 2013); *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir.2011) (quoting *United States v. Flores*, 404 F.3d 320, 324 (5th Cir.2005))("If a question of law is involved, then consideration of the motion is generally proper."). Thus, if the facts alleged in the charging document do not establish the crime charged, the charge must be dismissed. Counts One and Three do not satisfy these constitutional and statutory standards.

Counts One and Three seek to punish Mr. Brown for his speech. "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Russell v. United States*, 369 U.S. 749 (1962).[1] The indictment must allege a "true threat" to cause *physical bodily harm* on the alleged victim [RS]. Failing to do so, Counts One and Three must be dismissed.

---

[1] Of course, "it is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell v. United States*, 369 U.S. 749, 770 (1962).

### A. Counts One and Three

Count One charges Mr. Brown with a violation of 18 U.S.C. 875(c), which provides, in pertinent part:

> Whoever [i] transmits in interstate or foreign commerce any [ii] communication containing any **threat to [..] injure the person of another**, shall be fined under this title or imprisoned not more than five years, or both.

*See* 18 U.S.C. 875(c) (emphasis added).

Count Three charges Mr. Brown with a violation of 18 U.S.C. 115(a)(1), which provides, in pertinent part:

> Whoever ... [i] knowingly **threatens to assault,** kidnap, or murder, a United States official ... [ii] with intent to impede, intimidate, or interfere with such official ... while engaged in the performance of official duties, or [iii] with intent to retaliate against such official ... on account of the performance of official duties, shall be punished as provided in subsection (b).

*See* 18 U.S.C. § 115(a)(1) (emphasis added).

The statements alleged in the indictment consist of a series of messages on social media outlets, such as Twitter, in addition to a number of YouTube videos recorded by Mr. Brown.[2]

### B. The Government Must Allege a "True Threat" to Physically Harm

As a general rule, the First Amendment prohibits government actors from "dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002). However, The First Amendment permits the government to ban "true threats." *Virginia v. Black*, 538 U.S. 343, 359 (2003). Such threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a

---

[2] Counsel's review of the discovery indicates that the alleged statements are representative of the statements the government intends to present in its case.

particular individual or group of individuals." *Id.* Thus, in order to sustain a conviction under either charge, it is not enough to show the use of language that is literally threatening. Rather, the government must show the existence of a "true threat."

In the Fifth Circuit, "[a] communication rises to the level of an unprotected threat, within the meaning of 18 U.S.C. § 875(c), only if in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. O'Dwyer*, 443 Fed. Appx. 18, 20 (5th Cir. 2011)(affirming lower Court's dismissal of an indictment alleging a threat to kill a Bankruptcy Court Judge.) In *O'Dwyer*, the defendant sent an email with "a message for Judge Brown," *Id.* containing "threatening" statements such as "[S]uppose I become 'homicidal' ... a number of scoundrels might be at risk if I DO become homicidal." *Id.*

In affirming the lower court's dismissal, the Fifth Circuit held that in order for a statement to qualify as a "true threat" to inflict harm, (1) it must be addressed to a specific individual, (2) it must express bodily harm, and (3) it cannot be an expressly conditional or hypothetical statement. *Id.* (*citing and quoting Watts v. United States*, 394 U.S. 705, 708 (1969) (statement not a true threat considering in part its "expressly conditional nature")).

### C. The Alleged Statements are Not True Threats

Counts One and Three charge the same *actus reus*—specifically, making a threat to cause *physically bodily harm* on victim [RS]. Therefore, the government must allege *at least one* non-conditional statement, directed at victim [RS], that threatens bodily harm within the meaning of *O'Dwyer*. Mr. Brown's alleged conduct fails to meet these requirements for several reasons.

First, as shown in Table 1, *infra*, statements that appear to be addressed towards the alleged victim [RS] do not threaten bodily harm. In addition, several statements are conditional, and all qualify as political hyperbole.

4

**TABLE 1 – Statements Addressed to [RS]**

| | | |
|---|---|---|
| ¶ 6.a. | #FBI Now you know I know. I get call from Agent [RS] in 24 hrs, my laptops on plane to Dallas or I release in 25 #Anonymous. | • Statement doesn't threaten bodily harm.<br>• Statement conditional. |
| ¶ 8.a. | 0 uploading now, dropping in 30 minutes #Anonymous #Wikileaks #ProjectPM #PantherModerns #FBI #Agent [RS] | • Statement doesn't threaten bodily harm. |
| ¶ 8.b. | -1 [youtube address] #Anonymous #ProjectPM #Wikileaks #FBI #PantherModerns #Agent [RS] #OffThePigs #BlackBloc | • Statement doesn't threaten bodily harm. |
| ¶ 8.d. | If what #HBGary did to me was legal, it will be just as legal when I do some of it to #Agent [RS] | • Statement doesn't threaten bodily harm. |
| ¶ 8.g. | #Agent [RS] claimed my warrants weren't public due to #Zeta threat. He knows it's serious and won't mind if I shoot any suspects. | • Statement doesn't threaten bodily harm.<br>• Statement Conditional. |
| ¶ 8.h. | Threat to put my mom in prison last mistake #Agent [RS] will ever [expletive] make [youtube address] #OpClydeTolson. | • Statement doesn't threaten bodily harm. |
| ¶ 10.c. | They have two weeks to get send it all back, and twenty-four hours from now I will receive a call from [RS] himself, apologizing for what happened. | • Statement doesn't threaten bodily harm. |
| ¶ 11 | Send me info on #Agent[RS] – use @AaronBarr ethics re family members. | • Statement doesn't threaten bodily harm. |
| ¶ 12.a. | RS is a "[expletive] .. We are investigating him now" | • Statement doesn't threaten bodily harm. |
| ¶ 12.b. | RS is a "criminal who is involved in a criminal conspiracy." | • Statement doesn't threaten bodily harm. |
| ¶ 13 | "[s]end all info on Agent [RS] to barriticus@gmail.com so FBI can watch me look up his kids." | • Statement doesn't threaten bodily harm. |

Second, a statement addressed to [RS] explicitly clarifies that Mr. Brown did not threaten [RS] with physical bodily harm, as required to satisfy the charged offenses:

> "That's why [RS]'s life is over, but when I say his life is over, *I don't say I'm going to kill him, but I am going to ruin his life* and look into his [expletive] kids."

Indictment ¶12.c.

By contrast, as shown in Table 2, *infra*, statements that mention bodily harm are clearly general statements, not specific to alleged victim [RS]. *See O'Dwyer*, 443 Fed. Appx. at 20. (finding defendant "did not threaten harm to any particular individual" because he "never

identified any individual whom he intended to harm" in email transmission to Judge's chambers stating "a message for Judge Brown.")

The statement alleged at ¶5.f. is addressed to a Twitter user "@_Dantalion," not victim [RS]. The statement at ¶12.d. is general, and not-specific to victim [RS]. It is expressly hypothetical due to the use of the conjunction "if," which introduces a conditional clause. *See Watts v. United States,* 394 U.S. 705, 708 (1969) (statement not a true threat considering in part its "expressly conditional nature."); *See, e.g. O'Dwyer* ("if I DO become homicidal"). In addition, viewed "in context," *Watts*, 394 U.S. at 708, the statement is not truly threatening, rather mere (though crude) hyperbole. *See Id.*; *Rogers v. United States*, 422 U.S. 35, 44 (1975) ("crude or careless expression of political enmity" not a true threat)(Justice Marshall concurring); *United States v. Fuller*, 387 F.3d 643, 647 (7th Cir. 2004)(Stand up comedy and jokes not considered true threat).

The statement at ¶7—perhaps most vicious of all—is a republication of a statement by Fox News commentator Bob Beckel, which appears to advocate for the extrajudicial killing of Wikileaks founder Julian Assange (not the alleged victim [RS]). Mr. Beckel, to wit, remains unindicted.

**TABLE 2 – "Violent" Statements" (None Addressed to RS)**

| ¶ 5.f. | @_Dantalion No. I'd shoot you w/ my shotgun if you came near my home in Texas, where even I can legally kill ppl [hyperlink] | • Statement General / Non-specific.<br>• Statement not addressed to RS.<br>• Statement conditional.<br>• Statement hyperbolic. |
|---|---|---|
| ¶ 7. | "A dead man can't leak stuff . . . illegally shoot the son of a [expletive]." | • Statement General / Non-specific.<br>• Statement not addressed to RS.<br>• Statement not made by Mr. Brown |
| ¶ 12.d. | "[a]ny armed officials of the US government, | • Statement General / |

6

| | |
|---|---|
| particularly the FBI, will be regarded as potential Zeta assassin squads, and as the FBI and DPD know . . . I'm armed, that I come from a military family, that I was taught to shoot by a Vietnam vet and by my father a master hunter . . . I will shoot all of them and kill them if they come." | Non-specific.<br>• Statement not addressed to RS.<br>• Statement conditional.<br>• Statement hyperbolic. |

Finally, the remaining statements alleged in the Indictment do not address the alleged victim [RS]. Nor do they *remotely* qualify as threats to kill, kidnap or inflict bodily harm. Because the indictment fails to allege a statement (or statements) that can be prohibited, or punished, by law, Counts One and Three must be dismissed.

## POINT II.

**COUNT TWO SHOULD BE DISMISSED FOR FAILURE TO ALLEGE AN AGREEMENT TO VIOLATE § 119, AND FAILURE TO ALLEGE AN ACT IN FURTHERANCE OF THE CONSPIRACY**

Count Two charges Mr. Brown with a conspiracy to violate 18 U.S.C. 119, which provides in pertinent part:

> Whoever [i] knowingly makes restricted personal information about a covered person, or a member of the immediate family of that covered person, [ii] publicly available … [iii] with the intent to threaten, intimidate, or incite the commission of a crime of violence against that covered person, or a member of the immediate family of that covered person

*See* 18 U.S.C. 119.

As such, in order to survive dismissal, the government must allege (1) an agreement to commit the unlawful act described in §119, and (2) an act in furtherance of the object of the conspiracy. *See* §371 ("one or more of such persons [must] do any act to effect the object of the conspiracy.")

In Count Two, the "agreement" alleged is Mr. Brown's request of another person to "assist him find on the Internet restricted information" about [RS] and his family members. Indictment at 8. However, the indictment does not allege that Mr. Brown agreed to make said "restricted information" public. As such Count Two must be dismissed for failure to allege an essential element of the charged offense.

In addition, the "act in furtherance" alleged is deficient because it *cannot* be furtherance of the object of the conspiracy. Specifically, Count Two alleges a "search on the Internet for the restricted information." However, a search on the Internet, alone, *cannot* result in the acquisition of "restricted information." *See, e.g. Young v. CompUSA*, 3:03-CV-0268-P, 2004 WL 992577 (N.D. Tex. Apr. 30, 2004) ("The Court simply cannot compare the confidential and restricted dissemination of Data Bank and credit reports to police reports, which are generally public information.") (J. Solis). Because a "search on the Internet" cannot be in furtherance of making restricting information public, Count Two should be dismissed.

### POINT III.

### THE COURT SHOULD USE ITS BROAD DISCRETION TO STRIKE SURPLUSAGE FROM THE INDICTMENT

To the extent any of the charges in the indictment are allowed to stand, the Court should order the government to strike the superfluous factual allegations from the indictment or insure that the present indictment is neither given, nor read, to the petit jury.

Rule 7(d) of the Federal Rules of Criminal Procedure provides that "[t]he court on motion of the defendant may strike surplusage from the indictment . . . ." Where an indictment contains prejudicial surplusage, the appropriate remedy is to strike the surplusage. *See United States v. Goodman*, 285 F.2d 378, 379 (5th Cir. 1960); *United States v. Hood*, 200 F.2d 639, 642 (5th Cir. 1953). And, where the government asserts facts that are irrelevant or immaterial, particularly

when those facts might prove prejudicial, the defendant may compel their deletion. *United States v. Bissell*, 866 F.2d 1343, 1355-56 (11th Cir. 1989); *United States v. Hughes*, 766 F.2d 875, 879 (5th Cir. 1985).

An assertion that is not one of the elements of the charged offense is surplusage. *Hughes*, 766 F.2d at 879. Nor is it appropriate for the government to include unnecessary language in the Indictment as background information. "The proper course is to move to strike" unnecessary allegations that prosecutors attempt to insert for "color" or "background" hoping to "stimulate the interest of the jurors." C. Wright, Federal Practice and Procedure: Criminal § 127 (2003). "The inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial" and should be stricken. *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).

Here, the government has attributed statements to Mr. Brown that are immaterial, irrelevant and inflammatory to the charged Counts, and thus highly prejudicial to Mr. Brown. The inclusion of alleged statements do not advance a fact necessary to prove any of the elements of the offenses charged in the Indictment and are instead unnecessary prejudicial rhetoric. The inclusion of statements that have nothing to do with the crimes charged could mislead the jury to conclude that Mr. Brown is somehow guilty because of the irrelevant statements.

**A. Indictment Paragraphs 2, 3, 4, 7(a–e), & 8 (a, c, e–f) Should be Stricken as Surplusage.**

Each of the above alleged statements of Mr. Brown are generic in nature and are not directed at the alleged victim [RS]. As set out *supra*, Point I, generic threats are insufficient to constitute a "true threat."

The statements alleged in paragraphs 2, 3, 4, 7(a–e), & 8 (a, c, e–f) of the indictment are not facially directed at [RS]. As such, they do not constitute direct evidence in support of any of the Counts alleged, nor are they relevant background information. While it might be argued that the statements demonstrate Mr. Brown had the specific intent to threaten [RS] in particular, Mr. Brown's intent is likely not relevant in determining whether he committed Count One. Unless the government is willing to concede, and this Court so instruct, that Mr. Brown must have the specific intent to threaten [RS], Mr. Brown's generic statements are not relevant to the determination of whether Mr. Brown threatened [RS] in particular.[3]

Likewise Mr. Brown's generic statements have no relevance to the conspiracy alleged in Count Two to Make Publically available restricted information of an employee of the United States. None of the statements sought to be restricted inform the alleged agreement to make public information of RS and his family. Nor does the probative value of these generic statements outweigh their prejudicial effect.

Finally, the generic statements have no relevance to Count Three's allegation that Mr. Brown retaliated against a federal officer. While 18 U.S.C. §§ 115(a)(1)(B) and (b)(4) requires

---

[3] Although the question of required intent under § 875(c) in the Fifth Circuit, the majority of the federal circuits considering the intent requirement under § 875(c) have held that intent requirement is limited to general intent and that the speaker's specific intent is irrelevant. See *United States v. Elonis*, 730 F.3d 321 (3d Cir. Pa. 2013), (holding that the U.S. Supreme Court did not overturn the objective intent test in *Virginia v. Black*, 538 U.S. 343, 347-48 (2003) used for the true threats exception to speech protection under the First Amendment, and that a defendant could be convicted under 18 U.S.C.S. § 875(c) as long as a reasonable speaker would foresee that his statements would be interpreted as threats; *See also United States v. Jeffries*, 692 F.3d 473 (6th Cir. Tenn. 2012), *United States v. White*, 670 F.3d 498, 508 (4th Cir. 2012), *United States v. Mabie*, 663 F.3d 322, 332-33 (8th Cir. 2011), *cert. denied*, 133 S. Ct. 107, 184 L. Ed. 2d 50 (2012), and *United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013). The lone exception to this the Ninth Circuit which continues to maintain that speech may be deemed unprotected by the First Amendment as a 'true threat' only upon proof that the speaker subjectively intended the speech as a threat." *United States v. Cassel*, 408 F.3d 622, 631 (9th Cir. 2005).

that the defendant have the specific intent to impede, intimidate, and interfere with a law enforcement officer, the generic statements do not further proof of that intent.

Generic statements expressing displeasure and anger at the government as a whole or others do not constitute evidence that Mr. Brown specifically threatened to assault [RS] with the intent to impede his investigation. Instead, the inclusion of the generic statements runs the risk that Mr. Brown will be convicted based on generic threats of assault rather than a true threat of assault against [RS] made with the purpose to impede his investigation.

### B. The Court Should Limit the Indictment to Conduct That Occurred After September of 2012.

Count One of the Indictment alleges a date range between March 6, 2012 and September 12, 2012. Count Two alleges a conspiracy ranging from March 5 through September 12, 2012, "with persons known or unknown to the grand jury." However, the factual proffer, and indeed the only agreement alleged, commences in September of 2012.[4] Count Three of the Indictment alleges a date range between March 5, 2012 and September 12, 2012. Contrary to the time period alleged in the indictment for all three Counts, the alleged factual conduct in support of the Counts commences on September 4, 2012.

On July 1, 2013, Mr. Brown requested bill of particulars from the government seeking specificity as to what, if any, additional steps or threats were alleged in the devoid period. The government responded by indicating that the indictment, in combination with discovery furnished the defense, provided sufficient specificity. However, counsel's review of discovery has not identified any such statements or other evidence.

---

[4] The indictment further alleges that Mr. Brown specifically requested another person known to the grand jury to assist him find on the Internet restricted information about RS and his family and that person subsequently conducted a search.

11

As such, to the extent the Court finds that the indictment is sufficient to charge either Count One or Three, and notwithstanding a provision of a bill of particulars to indicate otherwise, the conduct should be limited that which occurred between September 10, 2012 to September 12, 2012. In addition, the Court should direct the government to strike the phrase "between March 6, 2012" from Count One, and "between March 5, 2012" from Count Three. This corresponds to the only references to the alleged victim [RS] in the indictment's factual proffer. Absent such limitation, the government would be free to produce evidence at trial supporting threats allegedly made by Mr. Brown against the FBI and agent RS for which Mr. Brown has received no notice and would be unprepared to meet.

Similarly, to the extent the Court finds the indictment sufficient to charge Count Two, the conduct should be limited to that which occurred after September of 2012. In addition, the government should not be permitted to use "known and unknown persons" as a catchall phrase in the indictment. *Marsh v. United States*, 344 F.2d 317, 322 (5th Cir. 1965)(A district court may strike terms such as "and other" from an indictment rather than require a bill of particulars for such phrases.) *United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980)(courts should strike language such as "including but not limited to" as surplusage.)

Thus, if the government wishes to allege that Mr. Brown conspired with multiple persons outside of September 1, 2012 until September 12, 2012, then it should be required to present the persons and times in a bill of particulars. Otherwise, the Court should direct the government to strike the phrase "Between March 5, 2012" and "other persons known and known to the grand jury."

**CONCLUSION**

For the reasons set forth above, the Mr. Brown respectfully request that the Court dismiss the indictment, or in the alternative strike surplusage.

Respectfully submitted,

 -s- *Ahmed Ghappour*
AHMED GHAPPOUR
*Pro Hac Vice*
Civil Rights Clinic
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX 78705
415-598-8508
512-232-0900 (facsimile)
aghappour@law.utexas.edu

CHARLES SWIFT
*Pro Hac Vice*
Swift & McDonald, P.S.
1809 Seventh Avenue, Suite 1108
Seattle, WA 98101
206-441-3377
206-224-9908 (facsimile)
cswift@prolegaldefense.com

MARLO P. CADEDDU
TX State Bar No. 24028839
Law Office of Marlo P. Cadeddu, P.C.
3232 McKinney Ave., Suite 700
Dallas, TX 75204
214.744.3000
214.744.3015 (facsimile)
mc@marlocadeddu.com

*Attorneys for Barrett Lancaster Brown*

**CERTIFICATE OF SERVICE**

I certify that today, January 31, 2014, I filed the instant motion using the Northern District of Texas's electronic filing system (ECF) which will send a notice of filing to all counsel of record.

/s/ Ahmed Ghappour
AHMED GHAPPOUR
/s/ Charles Swift
CHARLES SWIFT
/s/ Marlo P. Cadeddu
MARLO P. CADEDDU
*Attorneys for Barrett Lancaster Brown*

14