IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | NO. 3:12-CR-317-L |
| VS. | § § | NO. 3:12-CR-413-L |
| BARRETT LANCASTER BROWN | § § | |

<u>FACTUAL RESUME</u>

BARRETT LANCASTER BROWN, the defendant's attorneys, Ahmed Ghappour, Charles Swift, and Marlo P. Cadeddu, and the United States of America (the government) agree that the following is true and correct:

### Essential Elements

1. **Accessory After The Fact**: In order to prove that Brown was guilty of Count One of the Superseding Information, cause number 3:12-CR-413-L, the government would be required to prove beyond a reasonable doubt the following essential elements of a violation of 18 U.S.C. § 3:

    First: At least one other person was actively engaged in acts of Unauthorized Access to Protected Computers in violation of 18 U.S.C. §§ 1030(a)(5)(B) and § 1030(c)(4(A)(i)(I) as alleged in the Superseding Information;

    Second: Brown knew of the commission of the above crime by the principal; and

    Third: Thereafter, Brown assisted the principal by concealing his involvement, creating confusion regarding the identity of the principal, and diverting attention away from the principal in

Factual Resume (Brown) - Page 1

_BB_
Brown's Initials

order to hinder or prevent the principal's apprehension.

2. **Unauthorized Access to a Protected Computer:** The essential elements of a violation of 18 U.S.C. §§ 1030(a)(5)(B) and § 1030(c)(4)(A)(i)(I) are as follows:

   First: A person intentionally accessed a computer without authorization;

   Second: By said conduct, the person recklessly caused damage and loss to the protected computer; and

   Third: By said conduct, the person caused a loss aggregating at least $5,000 in value during any one-year period to one or more persons.

3. **Interference with the Execution of a Search Warrant:** In order to prove that Brown was guilty of Count Two of the Superseding Information, cause number 3:12-CR-413-L, the government would be required to prove beyond a reasonable doubt the following essential elements of a violation of 18 U.S.C. § 1501:

   First: Brown knew that FBI Special Agents were attempting to execute a Search Warrant and legal process of a Court of the United States;

   Second: Brown knowingly and willfully obstructed, resisted, or opposed the FBI Special Agents while they were attempting to execute and executing the Search Warrant.

4. **Transmitting a Threat in Interstate Commerce:** In order to prove that Brown was guilty of Count One of the Indictment, cause number 3:12-CR-317-L, the government would be required to prove beyond a reasonable doubt the following

Factual Resume (Brown) - Page 2

_BB_
Brown's Initials

essential elements of a violation of 18 U.S.C. § 875(c):

First: Brown knowingly transmitted a communication in interstate commerce; and

Second: The communication transmitted by Brown contained a true threat to injure the person of another.

5. A true threat is a serious statement expressing an intent to injure the person of another, which under the circumstances would cause apprehension in a reasonable person, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner.

## Factual Stipulations

6. Defendant Barrett Lancaster Brown (Brown) stipulates and agrees to the following facts in support of his plea of guilty. Brown understands that "the District Court may consider acts in addition to the acts underlying the offense of conviction so long as those other acts constitute relevant conduct as defined in the guidelines,"[1] that is the District Court may consider facts beyond those documented in this Factual Stipulation.

Facts Specific to the Accessory After The Fact

7. In or about early to mid-December 2011, a person known to Brown as "o" knowingly and intentionally accessed the computer network of Strategic Forecasting (Stratfor) without authorization. The unauthorized access is herein referred to as the Stratfor intrusion. The computer network of Stratfor constituted a protected computer

---

1  *United States v. Fowler*, 216 F.3d 459, 461 (5th Cir. 2000) and U.S.S.G. § 1B1.3.

Factual Resume (Brown) - Page 3

*BB*
Brown's Initials

pursuant to 18 U.S.C. § 1030(e)(2)(B), in that the network was used in or affecting interstate and foreign commerce and communications.

8.  Brown knew that during "o's" unauthorized access into the computer network of Stratfor in early to mid-December 2011, "o"

>   (a) defaced Stratfor's website,
>
>   (b) deleted files from Stratfor's server, causing damage exceeding $5,000 in value, and
>
>   (c) exfiltrated data from Stratfor's network system.

9.  On December 25, 2011, after the Stratfor intrusion, "o," Brown and others engaged in an IRC (Internet Relay Chat) chat. Brown offered to communicate with the Stratfor CEO on "o's" behalf, to assess if Stratfor had reasonable requests of redaction for "o" and others in possession of the data. Brown stated:

> Earlier it occurred to me that it might be a good idea to tell Stratfor that you guys will consider making any reasonable redactions to e-mails that might endanger, say, activists living under dictatorships with whom they might have spoken
>
> [..]
>
> if they fail to cooperate, it will be on them if any claims are made about this yield endangering anyone

10. Hours later, "o" agreed, responding, "I can paste you a few emails, which you can then forward on to them, as proof that you have some."

Factual Resume (Brown) - Page 4



Brown's Initials

11.     On December 26, 2011 Brown sent an email to the CEO of Stratfor, stating, "you've probably been informed that I've been authorized to communicate with Stratfor in an effort to minimize damages this operation may cause to vulnerable parties, etc. I received a call from your general office an hour ago but missed it; give me a call back at your convenience."

12.     Brown sought to assist "o" by communicating with Stratfor on "o's" behalf. By preventing "o's" identity from being known, Brown hindered or prevented "o's" apprehension.

Facts Specific to the Interference with the Execution of a Search Warrant

13.     On or about March 6, 2012, at approximately 6:05 a.m., Special Agents (SAs) of the Federal Bureau of Investigation (FBI) executed a court issued Search Warrant at Brown's residence.   Brown was not home at the time.

14.     At approximately 6:30 a.m. on March 6, 2012, FBI SAs, including FBI SA RS, visited KM's residence and notified Brown and KM that they had just executed a Search Warrant at Brown's residence.   FBI SAs asked Brown if he would voluntarily produce the laptops they were unable to locate at his residence.   Brown declined and the FBI SAs departed.

15.     Between 6:30 a.m. and 1:55 p.m. on March 6, 2012, KM and Brown believed that it was likely the FBI SAs would return with a Search Warrant for the computers that

Factual Resume (Brown) - Page 5

BB
‾‾‾‾‾‾‾‾
Brown's Initials

Brown had not volunteered. During this time, Brown posted the following statements in the ProjectPM IRC channel:

> just got raided
>
> long story short, the laptops they thought would be at my place weren't there
>
> as I wasn't home
>
> three other agents came to see me at mom's, where I stayed last night
>
> this morning at 6;30
> [the FBI had a warrant] for my apartment, yep . . . not for my mom's husband's house . . .
>
> so [the FBI] talked to me for a minute their purpose being to see if I'd be willing to give them any other laptops
>
> not sure if they knew that the apartment raid will have produced nothing more than an old IMac in my closet
>
> also, lead agent who left his card was named RS . . .

16. At approximately 10:00 a.m., Brown tweeted from his Twitter account as follows:

> My apartment was raided this morning by FBI. Feds also came to another residence where I actually was.
>
> . . . they didn't arrest me. They wanted laptops.

17. Brown and KM discussed Brown's desire to hide and conceal two of Brown's laptop computers from FBI SAs. Following this discussion, KM placed two of Brown's laptops behind some pots and pans in the far back of a lower corner cabinet in the kitchen in an attempt to conceal the laptops and prevent them from being located and seized by

Factual Resume (Brown) - Page 6

*BB*
Brown's Initials

the FBI. KM and Brown set up another laptop out in the open on a table, to act as a decoy device. The decoy device was less valuable in terms of evidentiary content.

18. FBI SAs arrived at KM's residence at approximately 1:55 p.m., and advised Brown and KM that they had obtained a second Search Warrant from a United States Magistrate Judge for KM's residence. The second Search Warrant authorized the FBI SA's to search for and seize data storage devices, to include the laptop computers. FBI SA's asked KM and Brown for any and all data storage devices belonging to or used by Brown. Once the FBI SA's had seized the decoy device and any other devices in plain sight, both Brown and KM denied the existence of any additional devices. Neither Brown nor KM disclosed that two laptops belonging to Brown were hidden in a kitchen cabinet.

19. Brown and KM knew that it was unlawful to conceal the laptops. By concealing the laptops, Brown acted knowingly and willfully.

20. Brown and KM knew that concealing the laptops would obstruct and impede the agents' search for the laptops and attempt to locate the laptops.

21. By hiding the laptops, Brown and KM intended to impede, obstruct, and influence the FBI investigation and the execution of the second Search Warrant issued by a United States Magistrate Judge.

Facts Specific to Transmitting a Threat in Interstate Commerce

22.     Prior to, during, and after the execution of the two search warrants, Brown was concerned about being the target of an FBI investigation. After the FBI executed the two search warrants and seized Brown's laptops and other data storage devices, Brown became obsessed about his property that had been seized and how to get his property returned. Brown was upset and believed the FBI had targeted KM for assisting Brown conceal the two laptops.

23.     In September of 2012, Brown knowingly communicated with others in interstate commerce; that being, over the Internet by way of Twitter.com, YouTube, etc… By these communications, Brown sought to threaten agents in the FBI.

24.     On or about September 10, 2012, Brown e-mailed JY stating that he was "going on Russia Today in 30 minutes to announce war on the FBI."

25.     On or about September 11, 2012, Brown posted the following on his Twitter account:

> #Agent[RS] claimed my warrants weren't public due to #Zeta threat. He knows it's serious and won't mind if I shoot any suspects.
>
> As I'll explain further tomorrow, I will regard any further armed raids as potential #Zeta assassination attempts and respond accordingly

26.     On or about September 11, 2012, Brown posted a self-made 15 minute video to YouTube.com, entitled *"Why FBI Agent [RS] Has Two Weeks to Send my Property back,*

Factual Resume (Brown) - Page 8

BB
Brown's Initials

*Part 1/3."* Within a few hours, Brown posted a second self-made 15 minute video to YouTube.com, entitled *"FBI Ultimatum Pt 2."*

27. On or about September 12, 2012, Brown e-mailed another person and stated "as noted, Doj wants to charge [KM] with obstruction of justice. Holder is a f-----g monster. More than willing to die if that's what I have to do to make media pay attention to possibility of prison time for [KM]." A short time later during the same e-mail exchange, Brown stated "every time I think of that I get more pissed off. Am armed with shotgun, other weapons I won't name so as not to provide intel; they know about shotgun and rifle . . . ."

28. On or about September 12, 2012, Brown posted a self-made 13 minute video to YouTube.com, entitled *"Why I'm Going to Destroy FBI Agent [RS] Part Three: Revenge of the Lithe."* In the video:

> Brown called FBI Special Agent [RS] a "f-----g chicken s--t little f----t c--------r" and indicated that "we are investigating [him] now."
>
> Brown stated "[t]hat's why [RS]'s life is over, but when I say his life is over, I don't say I'm going to kill him, but I am going to ruin his life and look into his f-----g kids."
>
> Brown stated [a]ny armed officials of the US government, particularly the FBI, will be regarded as potential Zeta assassin squads, and as the FBI and DPD know . . . I'm armed, that I come from a military family, that I was taught to shoot by a Vietnam vet and by my father a master hunter . . . I will shoot all of them and kill them if they come.
>
> Brown stated "[a]nd frankly, you know, it was pretty obvious I was going to be dead before I was forty or so, so, I wouldn't mind going out with two

Factual Resume (Brown) - Page 9

Brown's Initials

   FBI sidearms like a f-----g Egyptian Pharaoh. Adios."

29. By these statements, Brown knowingly communicated in interstate commerce a serious statement to injure the person of another, which under the circumstances would cause apprehension in a reasonable person, and with which Brown intended to scare, intimidate and harass FBI Special Agents.

          Respectfully submitted,

          SARAH R. SALDAÑA
          UNITED STATES ATTORNEY

          _____ 3-31-2014
          CANDINA S. HEATH   Date
          Assistant United States Attorney
          Texas State Bar No. 09347450
          1100 Commerce Street, Third Floor
          Dallas, Texas 75242-1699
          Tel: 214.659.8600 Fax: 214.767.2846
          candina.heath@usdoj.gov

    I have read (or had read to me) this Factual Resume and have carefully reviewed every part of it with my attorney.  I fully understand it and voluntarily agree that the facts recited herein are true and correct.

_[signature]_                                3/27/14

BARRETT LANCASTER BROWN    Date
Defendant

    I am the defendant's counsel.  I have carefully reviewed every part of this Factual Resume with the defendant.  To my knowledge and belief, my client's decision to sign the Factual Resume is an informed and voluntary one, and that according to my client the facts recited herein are true and correct.

_[signature]_                                3|27|14

AHMED GHAPPOUR    Date
Attorney for Defendant


_____    _____
CHARLES SWIFT    Date
Attorney for Defendant


_____    _____
MARLO P. CADEDDU    Date
Attorney for Defendant

I have read (or had read to me) this Factual Resume and have carefully reviewed every part of it with my attorney. I fully understand it and voluntarily agree that the facts recited herein are true and correct.

_____    3/27/14
BARRETT LANCASTER BROWN         Date
Defendant

I am the defendant's counsel. I have carefully reviewed every part of this Factual Resume with the defendant. To my knowledge and belief, my client's decision to sign the Factual Resume is an informed and voluntary one, and that according to my client the facts recited herein are true and correct.

_____    3/27/14
AHMED GHAPPOUR                  Date
Attorney for Defendant

_____    3/27/14
CHARLES SWIFT                   Date
Attorney for Defendant

_____    3/27/14
MARLO P. CADEDDU                Date
Attorney for Defendant